**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF TEXAS, SAN ANTONIO**

| | | |
|---|---|---|
| **MARCUS ESCOBAR, MARIO ZUNIGA, JR. AND** | § | |
| **NICOLAS GAMEZ, ON BEHALF OF THEMSELVES** | § | |
| **AND ALL OTHERS SIMILARLY SITUATED** | § | |
| | § | |
| **Plaintiff(s)** | § | |
| **vs.** | § | **Civil Case No. 5:14-cv-267** |
| | § | |
| **RENTAL XPRESS, LLC AND JANIE S.** | § | |
| **MIDDLETON AND KENNETH SHEA MIDDLETON,** | § | |
| **INDIVIDUALLY** | § | |
| | § | |
| **Defendant(s)** | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW Defendants Rental Xpress, LLC, Janie Middleton, and Kenneth Shea Middleton, and file their Response to Plaintiffs'[1] Motion for Partial Summary Judgment [DKT 37].  In support of their position that Plaintiffs' Motion should be DENIED, Defendants would show this Honorable Court:

**I.**  **Summary of Response**

Plaintiffs seek a partial summary judgment on two grounds in their motion: (1) the Defendants do not have a valid Belo Plan, and (2) Shea Middleton is an employer as that term is defined by the Fair Labor Standards Act ("FLSA") [DKT 37].   With respect to the first argument, specifically, Plaintiffs assert that Defendants' plan is not a valid Belo Plan for three reasons:

---

[1] Named Plaintiffs and all opt-in putative class members [DKT 23-35] will be collectively referred to herein as "Plaintiffs" for ease of reference.

**(a)** there was no agreement between Plaintiffs and Defendants that Plaintiffs would be paid, on a weekly basis, a regular rate that exceeded minimum wage for 40 hours, plus 20 hours at one-and-a-half times the regular rate, and Plaintiffs were not actually paid pursuant to that agreement (MSJ [DKT 37] at pp. 3-9);

**(b)** Plaintiffs did not work "irregular hours," that is, less than 40 hours in some weeks (as that term is defined under a Belo Plan) (*id.* at p. 9); and

**(c)** Plaintiffs allegedly worked more than 60 hours a week and were not paid time-and-a-half for those hours (*id.* at pp. 9-10).

Plaintiffs failed to meet their burden to establish that no genuine issue of material fact exists, and thus the burden never shifted. Plaintiffs' motion for summary judgment is based on the affidavits of interested witnesses – two named Plaintiffs themselves, Marcus Escobar, Nicolas Gamez, and one opt-in Plaintiff, Pedro Estrada. Escobar and Gamez have both been deposed since they tendered their affidavits. Escobar directly refuted, in his deposition, the statements made in his affidavit. Gamez also refuted his affidavit and proved himself to lack credibility. Neither affidavit can be considered. In addition deposition testimony from multiple witnesses, such as Rental Express owner Kenneth Shea Middleton, Rental Xpress managers, and a former employee, directly contradict the statements made in all three of the Plaintiffs' affidavits. Plaintiffs cannot prevail on their motion at the outset.

If the burden did shift, the evidence shows that Plaintiffs are indeed parties to a valid Belo Plan: there was a proper compensation agreement; Plaintiffs did work irregular

hours; and Plaintiffs did not work greater than 60 hours (if they did they were compensated).  In the alternative, significant fact issues exist.

As shown by the evidence attached to this Response, summary judgment cannot be granted in favor of the Plaintiffs.  The issues raised cannot be deemed established for trial in favor of the Plaintiffs.  If anything, the issues are established in favor of the Defendants.

Related, Defendants would show that while Kenneth Shea Middleton may be an owner and manager of Rental Xpress, LLC, he is not liable to Plaintiffs under the FLSA; a valid Belo Plan, among other defenses, and the lack of evidence to support Plaintiffs' claims, will result in a take-nothing judgment for all Defendants.

## II.    <u>Standard of Review and Burdens of the Parties</u>

The standard of review and burdens of the parties when assessing the viability of a motion for summary judgment are well known to this Court.  A summary judgment is proper if the pleadings, discovery products on file, and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  It is the movant's burden, when attempting to establish that summary judgment is proper on its own cause of action, to provide evidence that establishes "beyond peradventure <u>all</u> the essential elements of the claim" as a matter of law.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  The evidence presented by the movant must establish that no reasonable trier of fact could hold other than for the movant.  *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir.

3

1986).  The material tendered by the movant must be viewed in the light most favorable to the <u>non-movant</u> (here Defendants Rental Xpress and the Middletons), as Plaintiffs recognize in their motion (MSJ [DKT 37] at p. 3).  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

The burden does not shift to the non-movant until the movant has met its Rule 56 obligations.  FED. R. CIV. P. 56(e).  Indeed the non-movant need not even file a response or set forth specific facts showing that there is a genuine issue for trial; the summary judgment motion can only be granted if the movant has met its preliminary burden and the entry of summary judgment is "appropriate."  FED. R. CIV. P. 56(e); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  The question is whether "a fair-minded jury could return a verdict for the [non-movant] on the evidence presented."  *Yerdon v. Henry*, 91 F.3d 370, 374 (2d Cir. 1996).

Where, as here, the materials cited by the movants do not establish the absence of a genuine dispute, and/or the movants failed to produce competent evidence to support the assertion that no material fact exists, the motion for summary judgment must be denied.  FED. R. CIV. P. 56(c)(1)(B).

**III.**     **The Law Regarding Belo Plans**

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(f) specifically provides, in pertinent part:

> **Employment necessitating irregular hours of work**.  No employer
> shall be deemed to have violated subsection (a) [overtime required for
> hours over 40] by employing an employee for a workweek in excess of the
> maximum workweek applicable to such employee under subsection (a) if
> such employee is employed pursuant to a bona fide individual contract, . . .
> if the duties of such employee necessitate irregular hours of work, and the
> contract or agreement (1) specifies a regular rate of pay of not less than the
> minimum hourly rate . . . and compensation at not less than one and one-
> half times such rate for all hours worked in excess of such maximum
> workweek, and (2) provides a weekly guaranty of pay for not more than
> sixty hours based on the rates so specified.

29 U.S.C. § 207(f) (emphasis added).  These agreements, called "Belo Plans," are valid

exceptions to the FLSA overtime pay rule, as Plaintiffs recognize in their motion [DKT

37].  Indeed Plaintiffs cite numerous authorities in their summary judgment motion

acknowledging that Belo Plans are permissible and valid exceptions to the FLSA

overtime pay requirement (MSJ [DKT 37] at pp. 4-8).  The watershed cases are *Walling

v. A.H. Belo Corp.*, 316 U.S. 624 (1942) and *Walling v. Halliburton Oil Well Cementing

Co.*, 331 U.S. 17 (1947).

Plaintiffs also acknowledge, properly, that a Belo Plan **need not be in writing**, it

can be oral (MSJ [DKT 37] at p. 7, citing *Keith v. L.K. Ferguson*, 1979 WL 1987 (D.

Ore. 1979)).  *Keith v. Ferguson* also makes clear that whether a Belo agreement exists is

a **fact issue** (thereby necessarily precluding summary judgment) (MSJ [DKT 37] at p. 7).

Plaintiffs also cite *Bibb Mfg. v. Walling* (MSJ [DKT 37] at p. 6), which holds that

a Belo Plan exists where agreements between the employee and employer

> "were intended to, and did, really fix the regular rate at which each
> employee was employed, and that as made and carried out, [the contracts]
> compensated the employee at a regular rate considerably in excess of the
> minimum fixed by the statute, and for overtime at a rate not less than one
> and one-half times that regular rate."

*Id.*, 164 F.2d 179, 180 (5th Cir. 1947).   Where a Belo Plan exists, the employer "shall not be deemed to have violated" the overtime pay requirement.

**IV.   Plaintiffs' Summary Judgment Evidence Is Objectionable or Otherwise Raises Fact Issues; They Failed to Meet their Burden to Show Summary Judgment Can be Granted and the Burden Does Not Shift**

Plaintiffs' purported evidence in support of their motion for summary judgment is objectionable.   In the alternative, it creates genuine issues of material fact, rather than dispels them.   Summary judgment cannot be granted.   Plaintiffs having failed to meet their burden to establish their right to summary judgment, the burden does not shift to Defendants.

**A.  Plaintiffs' Affidavits are Objectionable and Should be Disregarded**

**1.  Marcus Escobar affidavit** (MSJ [DKT 37] Exh. 2)

Defendants object to Marcus Escobar's affidavit for the reason that it is not credible, without credence, and directly refuted by his own deposition and the depositions of other witnesses in the case; it should not be considered.   *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400, 2011 U.S. LEXIS 12150 at **53, n. 54 (5th Cir. 2011) (an affidavit that impeaches sworn testimony without explanation is not competent summary judgment evidence).   The evidence establishes that in the last six months of his employment with Rental Xpress, Escobar had a significant problem reporting for work (Exh. B, Bittler at p. 11).   Rental Express' Administrative Safety Manager Mike Bittler, a former federal police officer in Buffalo New York, testified that he kept track of Escobar's late slips and no-show's (Exh. B, Bittler at pp. 11-12).   Escobar was fired for cursing at a supervisor (*id*. at p. 12).   "Marcus was not a great employee" and "had a

temper." (*id*. at pp. 12, 13, 34, 35).   Bittler testified "Marcus embellishes" and did not work the number of hours he told people he did (*id*. at p. 17).  Shea Middleton testified that Escobar was fired for "insubordination numerous times – lack of attendance, his attitude, his verbal skills, his work ethic." (Exh. A, Middleton at pp. 90-91, 92, 93-94, 95-96, 97-98, 99-100)

Former Rental Xpress employee Alec Lara, who worked with Escobar, testified in his deposition that Escobar called him and asked him to lie for him in his deposition (Exh. E, Lara at pp. 12, 13, 30-31, 60).  Lara refused (*id*. at 32, 61).  Shea Middleton testified that Lara called him and told him that Escobar had asked Lara to lie for him (Exh. A, Middleton at pp. 100-101, 108).

Escobar says in his affidavit that "I always worked more than 60 hours" [DKT 37, Exh. 2], but in his deposition he said he could not identify any week in which he worked more than 60 hours (Exh. D, Escobar at p.  40).  Escobar admitted in his deposition that 3 days/week he went in to the shop to trouble-shoot equipment, spending 4-8 hours there (for a total of 12-24 hours per week, making it difficult at best to work more than 60) (*id*. at pp. 15, 33).

In his affidavit he says "I usually worked eighty to ninety hours per week," but in his deposition he said "almost 80 was the most ever" and that would have included commuting; and -- again – he can't name a week when this occurred (*id*. at pp. 40-41).

Escobar also states in his affidavit that "the Company did not keep track of our hours," but he directly refuted that in his deposition: Escobar admitted that Rental Xpress knew how many hours he worked, they knew when he left his house for a job site, and

they knew when he left the job site (because he called the shop to let them know) (Exh. D, Escobar at pp. 30-31). Escobar testified Rental Xpress kept track of all employees and their whereabouts on a big board at the office (*id*. at p. 32). He and the other employees also had to turn in signed tickets to show the work they performed (*id*. at p. 35). Named Plaintiff Zuniga testified similarly in his deposition (Exh. F, Zuniga at p. 27).

Furthermore, Escobar testified that he was hired in June 2012; in July 2012 he was paid $1,150 per two-week period ($575/week) (Exh. D, Escobar at pp. 22-23). In May 2013 he received a raise, to $1,250 per two-week period ($625/week); then he got another raise in December 2013 to $1,325 per two-week period ($662.50/week) (*id*. at pp. 23-24). His last day of employment was March 19, 2014, as he states in his affidavit.

Minimum wage is $7.25. A pay rate of $575/week equates to over $8.00 per hour for the first 40 hours ($8.00 x 40 = $320) plus 20 hours at $12.00 ([$8.00 x 1.5 = $12] x 20 = $240). $320 + $240 = $560. Therefore Escobar was paid well over minimum wage plus time-and-half when he was first hired, and his pay rate increased twice thereafter. The FLSA was in no way violated here.

Finally, Escobar's affidavit is directly refuted by the testimony of multiple witnesses as set forth below.

Escobar's affidavit is objectionable and cannot be considered. His deposition testimony establishes he was paid well above minimum wage plus proper overtime. In the alternative, fact issues exist.

Plaintiffs' motion for summary judgment must in all things be denied.

2. **Nicolas Gamez affidavit** ([DKT 37 MSJ Exh. 3])

Defendants object to Nicolas Gamez's affidavit for the preliminary reason that his initial date of employment is outside the scope of the statute of limitations. Gamez states he was employed with Rental XPress beginning in "approximately November 2011." This suit was filed on March 25, 2014. The two-year statute of limitations precludes Gamez from seeking alleged overtime pay prior to March 25, 2012. He alleges in his affidavit he worked "15 hour days for 28 days straight" in 2011. Gamez is an interested witness; he fails to corroborate this statement; and Defendants object (they also deny it is true). Any assertions of alleged acts or omissions prior to March 25, 2012 are not properly before the Court.

In addition, like Escobar, Gamez's affidavit is refuted by his own deposition testimony; it too cannot be considered. *Chambers*, 2011 U.S. LEXIS 12150 at **53, n. 54. And it is refuted by the testimony of others in the case. *First*, Gamez admitted in his deposition he was suspended for insubordination (Exh. G, Gamez at p. 45). He was also written up for abusing his company American Express card, and jailed for outstanding warrants for speeding tickets he amassed while working for Rental Xpress (*id*. at pp. 31-32, 45). Gamez's pay stubs include copies of credit card bills containing unauthorized charges on the company credit card at places such as Sarita's Place, Chili's Grill, Peter Piper and Waffle House (See MSJ Exh. 6 at p. 11, 13). Plaintiff Mario Zuniga, who was a supervisor, testified that service technicians were not allowed to use company credit cards for food in San Antonio or for anything personal (which Gamez clearly had done). (Exh. F, Zuniga at p. 18). Supervisor Mike Bittler testified that Rental Xpress had

express written authorization from the employees that personal expenses charged to company credit cards would be deducted from their paychecks (Exh. B, Bittler at at p. 44). Gamez's affidavit is rendered meaningless. In the alternative it raises fact issues.

*Second*, Gamez states in his affidavit that he was employed until September 2013, with a two-week break in employment in June/July 2013. He admitted in his deposition that he was given pay raises, and was making $1,300 every two weeks ($650/week) by the time he left Rental Xpress (Exh. G, Gamez at pp. 19, 45-46). Following the same math as set forth above for Escobar, Gamez was paid well above minimum wage for the first 40 hours worked, plus proper time-and-a-half. He also admitted he includes travel time in his hours-worked calculation, which, as set forth below, is not compensable (id. at 21-22, 33).

Finally, Gamez parrots Escobar's statement that "the Company did not keep track of our hours." Multiple witnesses, including co-Plaintiff Escobar, have testified that the Company <u>did</u> keep track of the employees and the hours they were working as set forth above and below.

### 3. <u>Pedro Estrada Affidavit</u> (MSJ [DKT 37] Exh. 4)

Estrada's affidavit is objectionable because, like Escobar and Gamez, he is an interested witness. He fails to corroborate any of the rote statements made in his affidavit, all of which are refuted by the testimony of his co-Plaintiff Escobar, and by multiple witnesses in the case. Estrada says he was a salary employee for less than three months. He says "I always worked in excess of 40 hours per week" and "I normally worked in excess of 80 hours a week" (apparently for the 2+-month time span). He says

"the Company did not keep track of our hours," and no one told him the salary structure. He says no allowance was made for compensation "of my hours" over 60 per week.

As set forth below, the evidence is to the precise contrary with respect to every statement made by Estrada in his affidavit.  Service technicians did work less than 40 hours; they did not work 80 hours or more; the company did keep track of hours; all service technicians were told the pay structure; and they did not work over 60 hours a week (if they did, they were compensated).  Plaintiffs' motion for summary judgment must be denied.

**B. Plaintiffs' Additional Summary Judgment Evidence Refutes Their Position**

Plaintiffs attach the entirety of Defendants' Responses to Requests for Admission as Exhibit 1 to their Motion [DKT 37].  A thorough review of Defendants' Responses would show that, first, most of Plaintiffs' requests are misleading as written, or they are based on false premises, and/or they reference  only half the story, being incomplete as worded (e.g., RFA 1, 2, 7, 11-14, 15, 17-20).  In addition, Defendants specifically denied in their responses that: (1) Plaintiffs were not paid overtime, (2) Plaintiffs were not provided verbal notice that their weekly pay was based on 40 hours regular pay and 20 hours overtime, and (3) no employee handbook existed.  If these responses do not definitively answer the question then they raise a fact issue, by expressly controverting what Plaintiffs state in their (objectionable) affidavits, and refuting the arguments in Plaintiffs' motion for summary judgment.

Further, the payroll documents attached to Plaintiff's motion for summary judgment at Exhibits 5, 6, and 7 raise fact issues as well.  Some of the pay stubs have

hand-written notations on them that state, for instance, "deducted 2 sick days . . . 88.33 x 2 = 176.66" [regarding Marcus Escobar] or "suspended May 27-29   Minus $260.01" [regarding Nicolas Gamez] (see Pls' MSJ Exh. 5 at pp. 2, 5; Pls' MSJ Exh. 6 at p. 11). Both of these pay stubs establish that each plaintiff's regular hourly rate of pay for the first 40 hours exceeded minimum wage, and they were paid for an additional 20 hours calculated at the regular rate times 1 ½.

That is, for Marcus Escobar, $88.33 per day divided by 8 hours is a regular rate of just more than $8.00, which exceeds minimum wage, plus 2 hours at regular rate times 1 ½ equates to just above $12.00 per hour (8 x $8 = $64; 2 x $12 = $24; $64 + $24 = $88). Likewise, for Nicolas Gamez, $260.01 divided by 3 days is $86.67 per day, which equates to a regular rate of just above $7.85 for 8 hours and time and a half at just above $11.78.  Again, minimum wage is $7.25.

In addition, the Payroll Transaction Detail Plaintiffs attach to their motion at Exhibits 5, 6 and 7 show that all three named Plaintiffs received raises over time, thereby compensating them additionally above minimum wage for the regular rate for 40 hours/week plus regular rates times one-and-a-half for 20 hours/week.

In sum, Plaintiffs fail to present competent summary judgment evidence that establishes there are no genuine issues of material fact, or that they are entitled to summary judgment as a matter of law on the issue of whether Rental Xpress had a valid Belo Plan in place.  Summary judgment must be denied out of hand.

**V.** **If the Burden has Shifted, the Facts Listed by Plaintiffs are Indeed Disputed; Further the Evidence Shows a Valid Belo Plan Exists as a Matter of Law, Otherwise Fact Issues Exist; Summary Judgment Cannot be Granted**

If the summary judgment burden can be said to have shifted, the Defendants would show that their evidence (which is competent summary judgment evidence as opposed to what Plaintiffs filed) defeats summary judgment.

Plaintiffs assert in their motion that "there is no dispute that":

1. they are non-exempt employees under the FLSA;

2. they "worked extensive amounts of overtime each week;"

3. they were "paid on a salary basis with no premium pay for hours over forty each week"; and

4. Defendants "keep no records of the hours worked by service technicians . . . ."

(MSJ [DKT 37] at pp. 1-2, rephrased at p. 3). Defendants refute the accuracy of these statements with competent summary judgment evidence attached hereto.

Correspondingly, Defendants refute Plaintiffs' three summary judgment arguments. *First*, Plaintiffs wrongly assert there was no Belo agreement with Defendants and they were not paid accordingly (MSJ [DKT 37] at pp. 3-9). The summary judgment evidence attached hereto shows that every service technician (including Plaintiffs), when they are hired, is told he will be paid a salary based on a 60-hour work week, with the first 40 hours paid at a regular rate equal to or above minimum wage and the next 20 hours paid at one and a half times the regular rate. The evidence shows the technicians (including Plaintiffs) accepted the jobs at the stated compensation. And they were

actually paid the agreed-to compensation.  *Second*, Plaintiffs allege they did not work less than 40 hours in some weeks, thereby negating the "irregular hours" requirement of a Belo Plan.  This contention too is refuted with competent summary judgment evidence attached.  *Third*, Plaintiffs contend they worked over 60 hours in some weeks, and were not paid for the hours over 60.   Both contentions have also been controverted with the evidence attached here.

### A. <u>Evidence in Support of this Response</u>

Defendants attach hereto, and incorporate by reference as if set forth in full, the following summary judgment evidence:

1. True and correct copy of excerpts from the deposition of Rental Xpress owner Kenneth Shea Middleton taken April 1, 2015 (Exhibit A)

2. True and correct copy of excerpts from the deposition of Rental Xpress Administrative Safety Manager Michael Bittler taken January 30, 2015 (Exhibit B)

3. True and correct copy of excerpts from the deposition of Rental Xpress manager Shane Dennis taken February 3, 2015 (Exhibit C)

4. True and correct copy of excerpts from the deposition of named Plaintiff Marcus Escobar taken January 30, 2015 (Exhibit D)

5. True and correct copy of excerpts from the deposition of former Rental Xpress employee Alec Lara taken April 1, 2015 (Exhibit E)

6. True and correct copy of excerpts from the deposition of named Plaintiff Mario Zuniga taken March 30, 2015 (Exhibit F)

7. True and correct copy of excerpts from the deposition of named Plaintiff Nicolas Gamez taken March 30, 2015  (Exhibit G)

### B. Plaintiffs' "Fact 1" is Disputed; More Importantly, Whether They are Exempt Under the FLSA is Not a Ground Raised for Summary Judgment

Defendants denied in their Original Answer [DKT 6], and continue to deny here, that Plaintiffs can recover under the FLSA, even if they are non-exempt employees under the Act, which Defendants deny.  Note Plaintiffs do not move for summary judgment on the issue of whether they are non-exempt under the FLSA; this is an issue for trial.  Note also, for example, that named plaintiff Mario Zuniga is not covered by the FLSA – he was a salaried supervisor who managed the shop and regularly directed 5-6 service technicians (including name Plaintiff Marcus Escobar), weight was given to his suggestions about or recommendations regarding employment actions, and he made roughly $40,000 per year by the time he left Rental Xpress (Exh. F, Zuniga at pp. 14-17, 37; accord Exh. D, Escobar at p. 82).  29 U.S.C. § 213; 29 C.F.R. § 541.100.  The jury will have to decide whether Zuniga, among others, can recover under the FLSA.

### C. Plaintiffs' "Fact 3" is Disputed; Plaintiffs were Paid Properly Under a Valid Belo Plan

Rental Xpress founder and owner Kenneth Shea Middleton testified by deposition that he founded Rental Xpress in 1999 after working for a similar company called OJ Rental (Exh. A, Middleton at p. 5).  Rental Xpress is an oilfield equipment, leasing and communication service; it leases equipment to its customers (*id.* at 5).    Service technicians carry equipment to job sites, service the equipment on site, or bring it back to the yard to service it there.  Service technicians may haul pumps to a job site and rig up hoses; they also take equipment down from a site (Exh. A, Middleton at pp. 7-10).

Technicians are paid a salary whether they work 20 hours or 60 per week (Exh. A, Middleton at pp. 11, 16).   They are paid no less than minimum wage for the first 40 hours, plus 20 hours overtime per week (*id*. at pp. 63-64, 79-80).   Middleton learned, from working at his former company OJ Rentals and consulting with a Department of Labor representative in Corpus Christi, that a salary should include overtime (*id*. at pp. 16-21).   The Department of Labor representative was investigating overtime complaints from employees at OJ Rental; by this time Middleton had created Rental XPress; in the course of the OJ Rental investigation the Labor representative consulted Middleton on how to pay a salary so that he did not have the same trouble OJ Rental had (*id*. at pp. 17, 19-20).   The DOL representative also gave Middleton pamphlets, and fliers to post on site (*id*. at p. 20)

> "She said that even if they do work over 40 hours that it's considered overtime.  So that I needed to base their salary – if I was going to pay them salary, that I needed to base it on so many hours of overtime included in salary.  And alert them when we hired them that they were going to work this many hours, this is what you are paid, this is how it's based so that's what we've done."

(Exh. A, Middleton at pp. 20-21; accord pp. 21-22, 116).   Middleton also sought legal advice from a labor lawyer in the early years to confirm that he was following proper procedures in terms of pay (*id*. at pp. 26-28, 29, 38-39, 116, 118).   "I have consulted with many attorneys many times." (*id*. at pp. 29-30, 116, 118)  Middleton is paying his service technicians based upon the advice he has received from the DOL representative, and from legal counsel (*id*. at pp. 30, 32, 38-39).   He explained to labor counsel he was paying the

service technicians on the basis of 40 hours regular time (above minimum wage) and 20 hours overtime per week, and this was approved (*id*. at pp. 32, 38-39)

Middleton testified he wants his employees to have a salary they can count on (Exh. A, Middleton at p. 22). "Our hours are already sporadic. So I don't want their pay to be sporadic with the hours, you know, because you might work 20 hours this week, but then you might work, you know, 60 hours the following week." (*id*. at p. 22)

Middleton testified he explains to everyone how they will be paid and how their salary is based, and his supervisors are to "relay the same message." (Exh. A, Middleton at pp. 25, 33). Supervisor Mike Bittler confirmed his understanding of the pay structure (Exh. B, Bittler at 20-21, 34, 47-48). Middleton did not personally hire any of the plaintiffs in this lawsuit; his many supervisors in his various offices did that, including Armando Arrellano and Bittler (Exh. A, Middleton at pp. 33-34). Middleton told every one of his managers to tell every new hire that they would be paid based on 40 hours regular time above minimum wage and 20 hours overtime; "I make the checks, so I can guarantee that they start off at that pay." (Exh. A, Middleton at p. 35)

Middleton has confirmed with the supervisors and with many others in the company that the employees were told how they were to be paid (Exh. A, Middleton at pp. 35, 47-48). He knows specifically that Marcus Escobar was told: he confirmed that with two of his supervisors (*id.* at pp. 47-48). Middleton knew he had an agreement with, and he knew it was the right thing to do to tell, the service technicians how they were paid; this comported with legal advice he later received (*id*. at pp. 36-38). Middleton has never told any employee that they were not being paid overtime (*id*. at p. 89).

Middleton knows to compensate for travel time when the technicians leave the shop to go to a job site, but travel directly from their homes to the job sites is not automatically compensable (Exh. A, Middleton at pp. 43-44). He learned this from the DOL representative during the OJ Rentals investigation and from labor counsel as well (*id*. at p. 44).

Indeed this is true. The Fifth Circuit holds that travel time to and from the employee's home to a job site, within the normal commuting area for the employer's business, is not required to be compensated. *Chambers v. Sears Roebuck & Co*., 428 Fed. Appx. 400, 2011 U.S. LEXIS 12150 at **25-29 (5th Cir. 2011). The length of time of the commute is not prohibitive – commutes of an hour, to three and one-half hours, to four hours have been held non-compensable. *Id*. at **28-29. Travel time must be "extraordinary" to be non-compensable. *Id*. at **28.

Escobar admitted that he traveled directly to jobs from his house 50% of the time (Exh. D, Escobar at pp. 29-30, 37, 38). Escobar testified the range of job sites out of San Antonio went from Corpus Christi to Laredo (*id*. at pp. 12-13; Exh. C, Dennis at pp. 19-20: the geographic range for the San Antonio shop was two hours away). He testified it took 1-2 hours to travel to the job sites from the service technicians' homes; the farthest he went was to Laredo, which took 2 ½ hours (*id*. at p. 30, 39; accord, Exh. F, Zuniga at pp. 23-24 [most job sites 2 to 2 ½ hours away]). Therefore, the travel from home to job site was within the normal commuting area for Rental Xpress and the length was not extraordinary. Named Plaintiff Nick Gamez also testified he includes travel time in his hours calculation (Exh. G, Gamex at p. 21-22, 33). The law does not require that an

employee be paid for this time, and there is no requirement to pay that time as overtime. *Chambers* at **25-29, 46-48.  Such a commute is not extraordinary, and courts have held much longer commutes to be non-compensable.

In addition when the employee is free to do as he chooses while on call, that time is not compensable.  *Chambers*, 2011 U.S. App. LEXIS 12150 at **67-68.  When an employee can use his wait time "effectively for his own purposes," and that time is not "controlled by the employer," that time is not compensable.  *Id.*  Escobar admitted employees including himself were free to do as they chose while on call, including running personal errands, "anything you want." (Exh. D, Escobar at pp. 14-15, 33-34; accord, Exh. C, Dennis at p. 58).  When he was on call, Escobar said he hung out at home (Exh. D at 33-34).

Driving a company truck with tools and equipment on board does not change the analysis.  *Chambers*, 2011 U.S. App. LEXIS 12150 at **24, 31 ("Nothing in the statutory scheme requires, or even implies, that such conditions on an employee's use of a company car, including transportation of parts or tools, can transform an otherwise non-compensable commute in to a compensable one.").

**D. Plaintiffs' "Fact 4" is Disputed: Rental Xpress Monitored the Employees' Hours**

Rental Xpress did indeed monitor the number of hours worked by Plaintiffs: Middleton testified they can keep track of their employees' hours because they know when a service call comes in, and the service technician calls when he finishes the job (Exh. A, Middleton at p. 39).  "I required them to call in and I required a supervisor to

keep track of how many hours they've worked." (*id*. at p. 39)   Middleton has been keeping track of the employees' hours and ensuring they do not exceed 60 in a week; management is responsible for monitoring (Exh. A, Middleton at pp. 42, 61-62, 127-28).

Supervisor Shane Dennis testified he took meticulous notes (Exh. C, Dennis at pp. 6-7, 66).   Rental Xpress supervisors also testified they kept a daily call log; and all employees were required to call in and report before they left for a job site, call in and report when they were leaving a job site, and otherwise keep Rental Xpress apprised of their whereabouts throughout each day, on a daily basis (Exh. C, Dennis at pp. 6-7, 8, 12-13, 56-58, 66-69, 107-108; Exh. B, Bittler at pp. 19, 33; Exh. F, Zuniga at p. 27 [Armando kept track of where people were working]).   Plaintiffs drove company vehicles with GPS on them and Rental Xpress could monitor the employees that way as well (Exh. A, Middleton at p. 40; Exh. C, Dennis at p. 108).

Named Plaintiff Marcus Escobar admitted in his deposition that Rental Xpress knew how many hours he worked, they knew when he left his house for a job site, and they knew when he left the job site (because he called the shop to let them know) (Exh. D, Escobar at pp. 30-31).   Escobar testified Rental Xpress kept track of all employees and their whereabouts on a big board at the office (*id*. at p. 32).   He and the other employees also had to turn in signed tickets to show the work they performed (*id*. at p. 35).   Named Plaintiff Zuniga testified similarly in his deposition (Exh. F, Zuniga at p. 27).

### E. Plaintiffs' "Fact 2" is Disputed: They Did Not Work Extensive Amounts of Overtime Each Week; Correspondingly the Evidence Shows they Worked Irregular Hours; They were Not Supposed to Work More than 60 Hours; They were Fully Compensated

Service technicians may come to the shop first thing in the morning, or go directly to a job site from their homes, depending on the circumstances (Exh. A, Middleton at pp. 8-10). If they work late one night, they stay home the next day until they get another call, rather than coming in to the shop at a designated time (*id*. at p. 10, accord, p. 87).

A service technician's hours are "sporadic" and kept around 50-60 hours/week (Exh. A, Middleton at p. 10). The job is on-call, and starts when a call comes in from the customer and ends when the job is finished (*id*. at pp. 11, 87). Some weeks service technicians only work 20 or 30 hours (*id*. at 79). It is intended that the job be a full time position, but sometimes there is not enough work to do, or, as now, there is a slump in the oil business (*id*. at pp. 81, 88). From 2012-2014, there were service techs who were not always working as many as 40 hours/week (*id*. at p. 81). Sometimes when business is busy Rental Xpress over-hires, but the newcomer technicians aren't ready to go to job sites so they stay at the shop (and thus work less hours) (*id*. at pp. 79-80, 82). Shane Dennis also testified that in some weeks the service technicians worked less than 40 hours, due to the nature of Rental Xpress's business (Exh. C, Dennis at pp. 6-7). Plaintiffs admit that "irregular hours" as defined by a valid Belo plan is hours less than forty per week (MSJ [DKT 37] at p. 9).

Employees were required to inform management if they were in danger of exceeding 60 hours worked in a week so that management could avoid same from

occurring (Exh. B, Bittler at pp. 47-48; Exh. E, Lara at p. 39).  Middleton confirmed this (Exh. A, Middleton at pp. 61-62).  He also testified that in reviewing the GPS reports on the company trucks the service technicians drove, "I'm looking at the last few months of these plaintiffs' hours and showing that they worked 40 or 50 hours a week . . . ." (*id* at p. 40).  In instances when employees such as Escobar were complaining about working more than 60 hours, Middleton checked the hours actually worked and confirmed he did not in fact work over 60 (Exh. A, Middleton at p. 132).  Supervisor Bittler testified Plaintiffs did not work more than 60 hours per week in compensable time, they usually worked 40-50 hours (Exh. B, Bittler at p. 31).  Middleton confirmed this as stated above.

If an employee actually worked over 60 hours he would have been paid for that time (Exh. A, Middleton at pp. 62, 128; Exh. E, Lara at pp. 39-40).  Employees were bonused for taking on extra tasks or working overtime (Exh. A, Middleton at pp. 129-130; Exh. B, Bittler at 38; accord Exh. E, Lara at p. 44).  Note here Plaintiffs do not suggest a Belo Plan is invalidated if an employee might work more than 60 hours: "even when a Belo plan is in place, the employer must still pay employees at the rate of time-and-a-half . . . for hours worked over sixty in any given workweek."  (MSJ [DKT 37] at p. 9)  As their cited case of *Mitchell v. Adams* notes, in the few instances in which hours exceed 60, when the employees are paid for that time, this shows a good faith intention to abide the Belo plan.  *Id*., 230 F.2d 527, 530 (5th Cir. 1956) (MSJ [DKT 37] at p. 8).

### F.  Conclusion

In sum, as agreed up front upon hiring, service technicians would be compensated for a 60-hour work week (40 hours at regular pay, 20 hours at time-and-a-half) whether

they worked that many hours a week or not.  The technicians were not to work more than 60 hours per week and rarely, if ever, did so.  If they did they were compensated. Sometimes they worked less than 40 hours a week.  A valid Belo Plan exists at Rental Xpress.

**VI.     Summation**

Plaintiffs failed to adduce competent summary judgment evidence to support their position that no valid Belo Plan exists at Rental Xpress.  The burden did not shift to Defendants to prove the contrary.

If the burden did shift, then the evidence above establishes that a valid Belo Plan exists: there was an agreement that Plaintiffs would be paid for a 60-hour work week, with the first 40 hours paid at a regular rate that exceeded minimum wage, and the next 20 hours paid at time-and-a-half.  That is indeed the way Plaintiffs were paid.  All of them were paid at a rate well in excess of the $7.25 minimum wage rate, indeed closer to $8.00/hour or more, for the first 40 hours.  All of them were paid time-and-a-half thereafter.  All of them received pay raises.  Shea Middleton and Mike Bittler testified that all service technicians were told they would be paid in this manner.

A valid Belo Plan exists: Plaintiffs work irregular hours.  Plaintiffs did in fact have weeks in which they worked less than 40 hours.  The nature of Rental Xpress' business is such that service calls are sporadic.  Sometimes the company over-hires, and new service technicians work in the shop at first, thereby reducing their hours.  It was indeed a regular occurrence to have weeks in which employees worked less than 40 hours per week.

It is not true that Defendants have no knowledge of the time worked by these

plaintiffs, as set forth above.  Every witness in the case, including Plaintiffs themselves, admit that Rental Xpress kept call logs and knew when employees were dispatched to various job sites.  Rental Xpress knew the whereabouts of its employees and monitored their hours.

A valid Belo Plan exists: Plaintiffs were paid for hours worked.  Plaintiffs assert they were not paid time-and-a-half for hours allegedly worked over 40, or over 60 (MSJ [DKT 37] at p. 9-10).  The evidence is clear that Plaintiffs were paid time and half for hours worked over 40, and they did not work over 60 hours per week; if that were to happen they were compensated.   In addition what Plaintiffs are calculating as compensable time is not compensable time – they admit that their calculations include driving from their houses to the job sites.  Commuter time from their homes to the place of business activity, which is indisputably within the Rental Xpress normal commuting area, is not compensable under the FLSA, as set forth in great detail by the Fifth Circuit in *Chambers*, 2011 U.S. LEXIS 12150, **25-29.  And when Plaintiffs are on call or have wait time, during those times they are able to spend their time as they wish, and their ability to pursue personal activities is not significantly limited.  That time, also, is not compensable and cannot be added to the hours worked on a weekly basis for purposes of asserting that Plaintiffs worked more than 60 hours (or, for that matter, over 40 hours). *Chambers*, at **67-68.

## PRAYER

WHEREFORE, Defendants pray the Court to DENY Plaintiffs' Motion for Summary Judgment.  Defendants pray for all other relief to which they are entitled.


Respectfully submitted,

**LAW OFFICE OF LAMAR G. CLEMONS**
 248 Addie Roy Rd., Ste. B-302
Austin, Texas 78746
(512) 651-7011; (512) 651-7001 fax
clemons@lgclemonslaw.com

By: S/LAMAR G. CLEMONS
   **LAMAR G. CLEMONS**
   State Bar No. 04372800
   Federal ID No. 16610

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICES


I hereby certify that I have served a true and correct copy of this Response to Plaintiffs' Motion for Summary Judgment upon each attorney of record and the original upon the Clerk of Court on this the 17th day of April, 2015.

*VIA FAX 210-616-9898,*
*VIA EMAIL AND REGULAR MAIL*

Mr. Michael V. Galo, Jr.
**GALO LAW FIRM, P.C.**
4230 Gardendale, Bldg. 401
San Antonio, Texas 78229


        S/LAMAR G. CLEMONS
        **LAMAR G. CLEMONS**