**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MARCUS ESCOBAR, ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-14-CV-267-XR |
| | § | |
| RENTAL XPRESS, LLC, ET AL., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**ORDER**

On this day the Court considered Plaintiffs' Motion for Partial Summary Judgment (docket no. 37). For the following reasons, the Court GRANTS Plaintiffs' motion for partial summary judgment.

**I.      Background**

Plaintiffs bring this Fair Labor Standards Act (FLSA) suit on behalf of themselves and all other similarly situated employees pursuant to the "collective action" provisions of 29 U.S.C. § 216(b).  Plaintiffs were employed as service technicians for Defendants Rental Xpress, LLC, Janie Middleton and Kenneth "Shea" Middleton.  Defendant Rental Xpress is an oilfield services company providing field equipment in the oil and gas industry.  Defendants Janie Middleton and Shea Middleton own Rental Xpress.

The Court conditionally certified a class of Rental Xpress service technicians in Texas on August 25, 2014.[1]  Docket no. 15.  Defendants paid service technicians, including Plaintiffs, on a bi-weekly salary basis.  Docket no. 48-1 at 11.  Plaintiffs allege they, as service technicians,

---

[1] Defendants have not moved to decertify the collective class.  *See* WRIGHT & MILLER § 1807 Collective Actions Under the Fair Labor Standards Act, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.); Docket no. 15 (outlining the Court's two-step approach to class certification: conditional certification in the early stage, and permitting a motion for decertification of the collective action by defendants once they have more information after discovery).

worked in excess of forty hours per week without proper overtime compensation in violation of the FLSA. Nineteen service technicians have joined the collective action.

Plaintiffs filed a motion for partial summary judgment on January 15, 2015 asking for summary judgment on two issues: 1) that Defendants cannot use 29 U.S.C. § 207(f), commonly referred to as a "Belo plan," as an affirmative defense in this action; and 2) that Shea Middleton is an "employer" under the FLSA. Docket no. 37. Defendants initially did not respond to the summary judgment motion. However, Defendants did file a motion to compel arbitration of six individuals who joined the collective action. Docket no. 41. Plaintiffs responded to the motion to compel on February 6, 2015. Docket no. 43.

The Court held a hearing on all pending motions on February 19, 2015. *See* docket no. 42. At the hearing, Defendants explained they intended to respond to the motion for summary judgment but required two months for proper discovery on the Belo plan issue. Plaintiffs did not oppose such discovery, so the Court granted the two months. Docket no. 46. In addition, Defendants withdrew their motion to compel arbitration and informed the Court they would not contest that Shea Middleton is an employer within the meaning of the FLSA. *See* docket no. 46. The Court mooted the motion to compel and will grant summary judgment on the employer issue.

On April 17, 2015, Defendants responded to the motion for summary judgment, arguing they had a valid Belo plan with the Plaintiffs and there are issues of material fact on all of the elements needed to establish a Belo plan, which requires the issue to survive Plaintiffs' motion for summary judgment. Docket no. 48. Plaintiffs replied providing additional evidence obtained after January 15, 2015. Docket no. 49. Defendants filed a sur-reply objecting, and moving to

strike, the evidence obtained after the date the summary judgment motion was filed or for failure to authenticate.  Docket no. 50.[2]

### A.  Relevant Undisputed Facts

It is undisputed that: 1) Plaintiffs were service technicians at Rental Xpress at times relevant to this action; 2) Rental Xpress is an employer under the FLSA, and Shea Middleton is an owner for FLSA purposes; and 3)  Plaintiffs worked over forty hours in at least some weeks.

### B.  Disputed Material Facts

Defendants' response to the partial motion for summary judgment identifies four different issues of fact that they assert are disputed and relevant to this motion.  Docket no 48 at 1-2.  First, they offer testimony that service technicians' hours were "sporadic," reaching as low as 20 hours per week, Docket no. 48-1 at 10, to refute evidence presented that their hours never dropped below forty.   Second, Defendants offer evidence that supervisors told newly hired service technicians, including Plaintiffs, that they would be paid "40 hours regular time and 20 hours of overtime," docket no. 48-1 at 35, 47-48, and an agreement was made establishing their pay and hours, *id*. at 63, 64, to dispute evidence presented by Plaintiffs that the parties never entered a bona fide contract regarding their hours and wages.   Third, Defendants offer testimony that they had procedures in place to prevent service technicians from working sixty hours per week, docket nos. 48-2 at 47-48 and 48-5 at 39, and that Shea Middleton personally ensured that such work not occur except on rare occasions, *id*. at 42, 61-62, 127-28, to conflict with testimony that Rental Xpress service technicians frequently worked more than 60 hours per week.   Last, Defendants present evidence that they kept records of service technicians' hours on a "big board," docket no. 48-4 at 32, tracked the trucks used by service technicians on a GPS system,

---

[2] Without ruling on Defendants' objections, which appear to have some merit, especially regarding the failure to authenticate, the Court has not used evidence presented in Plaintiffs' Reply, as it is not needed to decide the outcome of this motion.

docket nos. 48-1 at 40 and 48-3 at 108, and kept notes of the employees' whereabouts and hours after they reported to supervisors, *see, e.g.*, docket nos. 48-2 at 19 and 48-3 at 6-8, to refute Plaintiffs' statements that Defendants did not keep records of the hours service technicians worked.

## II.      Legal Standard

A court shall grant summary judgment if the movant shows that there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  To establish that there is no genuine dispute over any material fact, the movant must submit evidence that negates the existence of some material element of the nonmoving party's claim or defense.  *Lavespere v. Niagra Machine & Tool Works, Inc*., 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993).  If the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, the movant can merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense.  *Id.*

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, put differently, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.4 (1986); *Lavespere,* 910 F.2d at 178.  The court must draw reasonable inferences and construe evidence in favor of the nonmoving party.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment.  *Freeman v. Tex.*

*Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).  The court also considers "evidence supporting the moving party that is uncontradicted and unimpeached."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

### III.    Analysis

**A.  Summary Judgment: Belo Plan under FLSA Section 7(f)**

Section 7(a)(1) of the FLSA requires employers to pay all employees at least "one and one-half times the regular" pay rate for hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1); *Singer v. City of Waco*, 324 F.3d 813, 818 (5th Cir. 2003).   "The purposes of the overtime requirement are two-fold: 1) to spread employment by placing financial pressure on the employer to hire additional workers rather than employ the same number of workers for longer hours; and 2) to compensate employees who do work 'overtime' for the burden of having to do so." *Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 152 (5th Cir. 1982) (citing *Walling*, 323 U.S. at 40).  Section 207(f) creates an exception to the general § 7(a) overtime payment requirement for contracts (or "Belo plans") with employees who have irregular work weeks, i.e. whose hours worked per week necessarily fluctuate above and below the forty-hour cut-off.  29 U.S.C. § 207(f).  Exceptions to the FLSA are "narrowly construed against the employer asserting them."  *Donovan*, 666 F.2d at 153 (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

Section 7(f) establishes four elements that must be met for the Belo plan exception to apply to an employee: 1) "the duties of the employee must necessitate irregular hours of work;" 2) "the employee must be employed pursuant to a bona fide individual contract or collective bargaining agreement;"  3) "that contract must specif[y] a regular rate of pay for hours up to forty and one and one-half times that rate for hours over forty;" and 4) "the contract must

provide a weekly pay guarantee for not more than sixty hours, based on the specified rates." *Donovan*, 666 F.2d at 153 (citing 29 U.S.C. § 207(f)(1) and (2)) (internal citations and quotations omitted); *see also Mohammadi v. Nwabuisi*, 990 F. Supp. 2d 723, 745 (W.D. Tex. 2014) *reversed in part on other grounds by Mohammadi v. Nwabuisi*, No. 14-50115, 2015 WL 1323150, at *1 (5th Cir. Mar. 25, 2015).

Plaintiffs and all other service technicians were non-exempt under the FLSA at all relevant times to this case, as Defendants admit they were to be paid as non-exempt employees (i.e. one and one-half times their base rate for overtime hours). *See* docket no. 37 ex. 1 at ¶ 17-19. Defendants argue they did not need to pay overtime to Plaintiffs because a proper Belo plan was in place. Given the undisputed facts and construing all fact disputes in the light most favorable to Defendants, the Court concludes Defendants cannot properly assert a valid Belo plan as a defense in this case because any reasonable juror would conclude: 1) Plaintiffs did not work irregular hours, 2) there was not "specified a regular rate" of pay for hours up to forty and one and one-half times that rate for hours over forty; and, thus 3) there was not a contract that provided "a weekly pay guarantee for not more than sixty hours, based on the *specified rates*," because there was not a specified regular rate on which a guaranteed weekly salary could have been based.

## 1. Irregular Hours

"For hours to be considered irregular within the meaning of section 7(f), they must, in a significant number of weeks, fluctuate both below forty hours per week as well as above, and the fluctuations below forty must result from work requirements, not vacations, holidays, illness or reasons personal to the employee." *Donovan*, 666 F.2d at 154 (citing several cases and a U.S. Department of Labor interpretation; finding an employee working fewer than forty hours in 6.9%

of weeks not a "significant number of weeks" within the meaning of the statute to qualify as irregular); *Crenshaw v. Quarles Drilling Corp.*, 798 F.2d 1345, 1349 (10th Cir. 1986) *disapproved of on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) (working fewer than forty hours in eight of 119 weeks, or 6.7%, is "not sufficient to satisfy the requirement of "irregular hours" in the § 207(f) exception and thus this employment agreement is not a Belo" plan).

Plaintiffs argue "the hours of the Plaintiffs, opt-ins, and other service technicians did not fluctuate above and below forty each week." Docket no. 37 at 9. "Rather, these employees' hours always exceeded forty per work week." *Id.* (citing Plaintiff Marcus Escobar's affidavit, docket no. 37-1 at ¶¶ 1 and 4, Plaintiff Nicolas Gamez's affidavit, docket no. 37-2 at ¶¶ 1 and 4, and Plaintiff Pedro Estrada's affidavit, docket no. 37-4 at ¶¶ 1 and 3, for this proposition). All three men state they "always worked more than sixty hours . . . ." In his deposition, Escobar testified he always worked over forty hours per week, barring illness, with a maximum of eighty hours, docket no. 48-4 at 40, and Mario Zuniga testified he worked between 60 and 80 hours per week when he was employed as a service technician, docket no. 48-6 at 23-24. Gamez testified he always worked more than forty hours, "70-plus" if he included travel time. Docket no. 48-7 at 21-22.

Defendants argue that Plaintiffs' hours did fluctuate above and below the required forty-hour per week threshold, claiming there is a legitimate question of fact as to this issue. They base this argument on Shea Middleton's deposition, where he stated, "Our hours are already sporadic . . . because you might work 20 hours this week but then you might work, you know, 60 hours the following week." Docket no. 48-1 at 22. "Especially when they are new and [service technicians] don't know anything for the first six months, they are going to be back and forth

with hours." *Id*. at 79.  Defendants also appear to argue, though never directly, that Plaintiffs are including non-compensable hours like travel time in their hours calculation when they assert they never worked less than forty hours per week.  Docket no. 48 at 18-19.

The Court finds that the evidence offered by Defendants to show irregular hours is not sufficient to raise a genuine issue of fact, as it is composed only of generalized statements, and even those generalized statements are refuted by Middleton's own testimony.  Middleton's statements actually stand for the proposition that these Plaintiffs' hours did not fluctuate below forty hours per week in a significant number of weeks, if at all.  Middleton called the service technicians' hours "sporadic" and kept around "50, 60 hours a week."  Docket no. 48-1 at 10. Middleton stated new service technicians work less than experienced ones, and then said "the first two or three months they are going to be working 40 hours a week, maybe 50 tops."  *Id*. at 80.  Middleton agreed the service technicians worked overtime "most weeks" and that he "hoped" they would.  *Id*. at 87.  When looking at the GPS records for the trucks used by the service technicians, which Middleton said "shows a lot" about service technicians' hours, Middleton plainly stated "the last few months of these plaintiffs . . . worked 40 or 50 hours a week."  *Id*. at 40.

Shane Dennis, a supervisor of service technicians at Rental Xpress, when asked "if the [service technicians] were not going to have a sick day or a vacation day, would they always work over 40 hours a week?" responded "that's a yes and no."  After a brief recess, Dennis was asked what that answer meant, and he stated

> "sometimes they would work over 40, but that . . . varied.
> Sometimes you might have one . . . one . . . one employee that
> might work over. Sometimes [] you know, you wouldn't have any .
> . . But we didn't keep track of hours . . . the only hours we really
> kept track of was how long they were out . . . in the field. If they
> were out ten hours, 15 hours, 16 hours."

Docket no. 48-3 at 6-7.

Construing the evidence in the light most favorable to Defendants, the Court finds no reasonable juror could conclude that Plaintiffs' and other service technicians' at Rental Xpress hours were irregular such that they dipped below forty in a significant number of weeks because the uncontroverted evidence in the record shows these service technicians worked, and were expected to work, over forty hours per week without fluctuation.  The owner of the company stated their hours were kept at 50 to 60 hours per week.  When shown the limited records for the Plaintiffs in this case, the owner noted that they never worked less than forty hours.[3]  When asked if service technicians worked overtime the owner said he "would hope so."  One of the company's supervisors apparently confirmed that the service technicians worked over forty hours per week unless they were sick or took vacation.  The service technicians' hours at Rental Xpress did not "fluctuate" above and below 40 such that a valid Belo plan exception could apply.[4]  *See Donovan*, 666 F.2d at 154; *Condo v. Sysco Corp.*, 1 F.3d 599, 602 (7th Cir. 1993) (holding when a plaintiff's "overtime hours fluctuated, but his regular hours did not: he always worked at least forty hours each week" § 207(f) does not provide an exception to the FLSA); *Mohammadi v. Nwabuisi*, 990 F. Supp. 2d at 746 (holding an employee's hours that were sporadic, but averaged 58 per week, and when no other evidence was presented of fluctuation, the employee's hours did not fluctuate above and below 40 enough to support a valid Belo plan).

Having shown Defendants fail as a matter of law on one of the four mandatory elements set out in the exception to the FLSA general overtime payment requirement in § 207(f),

---

[3] Middleton never qualified this hour calculation or expectation as including non-compensable travel time, rendering Defendants indirect argument in their brief unconvincing and does not create a genuine issue of fact.

[4] The Court is not convinced by Defendants' arguments that the Plaintiffs' testimony should be completely disregarded because they are "interested" parties or were disciplined for troubling behavior.  Given the opportunity, Defendants present no competent evidence to refute claims that Plaintiffs always worked more than forty hours per week, and often many more.  Plaintiffs' testimony, and Rental Xpress representatives' statements affirming Plaintiffs' testimony, is the only competent evidence on the issue, so there is no genuine issue of fact.

Plaintiffs' motion for partial summary judgment is granted and Defendants are precluded from using a Belo plan defense in this case.[5]

## 2. Regular Rate of Pay

A valid Belo plan must clearly establish "regular rate of pay" for the first 40 hours of work to be performed, and one and a half times that rate of pay for the remaining 20 hours of work.  According to the Fifth Circuit, "section 7(f) . . . requires that the employee contract 'specify a regular rate of pay' and the weekly guarantee be 'based on the rates so specified' . . . Although nowhere expressly stated in the statute, we think it a matter of fair implication that the 'regular rate of pay' required to be specified by section 7(f) must be the actual 'regular rate' at which an employee is employed as determined under Section 7(e)."  *Donovan*, 666 F.2d at 154. The Supreme Court has held "regular rate" means "the hourly rate actually paid for the normal, non-overtime workweek." *Walling*, 1944, 323 U.S. at 40.  A Belo plan must be based upon a specified, non-varying "regular rate of pay." *Id*.  The Belo plan exception is "limited to agreements which contain a 'provision for a guaranteed weekly wage with a stipulation of an hourly rate,' and that other types of agreement . . . cannot, by their terms, determine what is the 'regular rate' named in the Act.  That 'regular rate,' . . . is an 'actual fact.'" *Aaron v. Bay Ridge Operating Co.*, 162 F.2d 665, 668 (2d Cir. 1947) *modified*, 334 U.S. 446 (1948) (citing *Madison Avenue Company v. Asselta*, 67 S. Ct. 1178, 1184 (1947)).

The rate can be calculated by some specified formula. *Asselta*, 67 S. Ct. at 1181 ("A wage plan is not rendered invalid simply because instead of stating directly an hourly rate of pay

---

[5] Because Defendants have not moved to decertify the class, or argued or presented any evidence that Escobar, Gamez and Zuniga's experience with hour fluctuation is not representative of the collective Plaintiffs, the Court grants summary judgment on this issue for all opt-in Plaintiffs in this case.  *See Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973) (based on testimony from less than half the opt-in plaintiffs and an investigator the court "might well have concluded that plaintiff had established a prima facie case that all thirty-seven employees had worked unreported hours").  The Court grants summary judgment without regard to additional evidence from different opt-in Plaintiffs presented in Plaintiffs' reply brief (docket no. 49).

in an amount consistent with the statutory requirements, the parties have seen fit to stipulate a weekly wage inclusive of regular and overtime compensation for a workweek in excess of 40 hours and have provided a formula whereby the appropriate hourly rate may be derived therefrom.").   The rate or formula cannot be set unilaterally by the employer.   *See Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84, 87 (9th Cir. 1975) (the FLSA "does not allow [an employer] to designate unilaterally what the 'regular rate' will be, then, on the basis of that designation, pay employees a predetermined sum for up to fift[y] hours per work week and one and one-half the designated rate for all hours worked in excess of fifty").

There is no "specified regular rate of pay" in this case.   Defendants have provided no summary judgment evidence that any service technician at Rental Xpress had a "regular rate of pay."   Shea Middleton stated repeatedly in his deposition the Plaintiffs were paid at least minimum wage.   *See, e.g.*, docket no. 48-1 at 63-64 and 79-80.   He never articulated a specific regular rate of pay for any of the Plaintiffs or any service technician.   Without a regular rate of pay, there is no rate of pay for overtime to be calculated.

In an attempt to salvage their position, Defendants argue in their response to the motion for summary judgment that, when analyzing two of Plaintiffs' paychecks, each was paid a "regular rate" that exceeded minimum wage.   One of Marcus Escobar's paystubs notes he was "deducted 2 sick days . . . 88.33 x 2 = 176.66."   Docket no. 37-5 at 2 and 5.   Elsewhere, Escobar stated he received $1,150 per two-week period ($575/week) in July 2012; $1,250 ($625/week) for one two-week period in May, 2013; and $1,325 ($662.50/week) for another two week period in December, 2013.   Docket no. 48-4 at 22-24.   One of Nicolas Gamez's paystubs indicated he was "suspended May 27-29," which led to a note of "Minus $260.01" on the stub.   Docket no. 37-6 at 11.

Minimum wage for the relevant time was $7.25. Defendants argue "A pay rate of $575/week equates to over $8.00 per hour for the first 40 hours ($8.00 x 40 = $320) plus 20 hours at $12.00 ([$8.00 x 1.5 = $12] x 20 = $240). $320 + $240 = $560. Therefore Escobar was paid well over minimum wage plus time-and-half when he was first hired." Docket no. 48 at 8. Further, Defendants argue, "for Marcus Escobar, $88.33 per day divided by 8 hours is a regular rate of just more than $8.00, which exceeds minimum wage, plus 2 hours at regular rate times 1 ½ equates to just above $12.00 per hour (8 x $8 = $64; 2 x $12 = $24; $64 + $24 = $88)." Docket no. 48 at 12. Similarly, Defendants argue, "for Nicolas Gamez, $260.01 divided by 3 days is $86.67 per day, which equates to a regular rate of just above $7.85 for 8 hours and time and a half at just above $11.78," an amount that exceeds minimum wage.

Defendants appear to be arguing that they had a valid Belo plan with a specified regular rate because, based on their bi-weekly salaries, it is possible to calculate a regular rate of pay per hour for all service technicians' that would have exceeded minimum wage. *See* docket no. 48 at 8 and 12. Defendants also claim that all new employees are told, by a supervisor, about the method of payment in Rental Xpress's system; forty hours per week at regular pay and one and one-half times that rate for twenty hours. *Id.*[6] But Defendants fail to argue, or cite to any evidence in the record that shows, that each service technician in fact had a specific regular pay rate. Paying "at least minimum wage" is not a "specified rate" within the meaning of § 207(f).

Defendants' argument and math attempting to establish a regular rate is a *post hoc* calculation and rationalization. Middleton may have met his goal of having a base salary above minimum wage in some instances. But the record contains no evidence that anyone, Defendant or Plaintiff, performed the calculations for a regular rate made in the brief or knew a "specified regular rate" at the relevant time in this case (i.e., the three years prior to the filing of this case),

---

[6] Citing Middleton's deposition, despite him lacking first-hand knowledge of hiring conversations.

nor does it indicate a specified rate of pay was stated by any Defendant or agreed to by any of the Plaintiffs in this case.  Instead, Defendants appear to have set bi-weekly salaries without using a pre-determined "regular rate" for the first 40 hours, from which a one and one-half times calculation for the next 20 hours could have been made.  At most, the specified rate was set "unilaterally," and after the fact, which is not permitted for a valid Belo plan.  *Brennan*, 510 F.2d at 87 (the FLSA does not allow an employer to designate the regular rate "unilaterally").  Defendants have only established that they could have set the regular rate of pay at the minimum wage or above to create a Belo plan, not that the rate was set beforehand or agreed to by the parties.

In their sur-reply,[7] Defendants rely on *Asselta* to argue they have a bi-weekly wage inclusive of regular and overtime compensation "instead of stating directly an hourly rate of pay."  Docket no. 50 at 4 (citing 67 S. Ct. at 1181).  Defendants, however, ignore the last portion of the sentence, which reads in full "A wage plan is not rendered invalid simply because instead of stating directly an hourly rate of pay in an amount consistent with the statutory requirements, the parties have seen fit to stipulate a weekly wage inclusive of regular and overtime compensation for a workweek in excess of 40 hours *and have provided a formula whereby the appropriate hourly rate may be derived therefrom*."  *Asselta*, 67 S. Ct. at 1181 (emphasis added).  There is no evidence Defendants provided a formula to Plaintiffs to derive an appropriate hourly rate, now or beforehand and thus have failed to specify a regular rate.  *See Adams v. Dep't of Juvenile Justice of City of New York*, 143 F.3d 61, 69 (2d Cir. 1998) (an example of a specific contract provision that might properly set out a formula is: "The hourly rates for those regularly

---

[7] The sur-reply improperly objects to the specified rate point as only being mentioned in Plaintiffs' reply in violation of FRCP 56.  Plaintiffs raised this issue clearly in the original motion.  Docket no. 37 at 8 ("Plaintiffs each received a fixed bi-weekly salary regardless of the number of hours they worked with no mention of what their hourly rate or overtime rates would be.").

employed more than forty (40) hours per week shall be determined by dividing their weekly earnings by the number of hours employed plus one-half the number of hours actually employed in excess of forty (40) hours") (quoting *Asselta*).

By not setting a specified regular rate or specifically setting a formula to calculate one, Defendants' arrangement with Plaintiffs is not one the Belo plan exception in § 207(f) intends to protect. Employers are only protected by the Belo plan exception to the FLSA if they "specify a regular rate of pay" and a "weekly guarantee . . . based on the rates so specified." *Donovan*, 666 F.2d at 154 (citing § 207(f)). Exceptions to the FLSA like § 207(f) are narrowly construed against employers like Rental Xpress and Middleton to further the goals of the FLSA; protecting workers, spreading employment instead of consolidating hours in fewer workers, and compensating employees for the burden of working overtime. *See Donovan*, 666 F.2d at 152 (citing *Walling*, 323 U.S. at 40)). As the Defendants present no evidence that they specified a regular rate of pay before-the-fact that was made known to the service technicians at the time they were hired, the Court finds that there is no genuine issue of material fact that Defendants failed to establish they had a valid Belo plan as a matter of law, as they did not have agreements specifying a regular rate or setting a formula with Plaintiffs in this case.

Lastly, because there was not a contract that specified a regular rate for the service technicians, Defendants also did not have a valid Belo plan in place with Plaintiffs for "a weekly pay guarantee for not more than sixty hours, based on the specified rates." *See* § 207(f). Without a specified rate to base payment on, Defendants cannot meet the fourth criteria for a Belo plan, either.

### IV.    Conclusion

For all of the above stated reasons, the Court GRANTS Plaintiffs' motion for partial summary judgment (docket no. 37).  Defendants may not use § 207(f)'s Belo plan affirmative defense and Defendant Shea Middleton is an employer for the purposes of the FLSA.

It is so ORDERED.

SIGNED this 26th day of May, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE